Robert A. Maynard, Bar No. 5537
RMaynard@perkinscoie.com
Erika E. Malmen, Bar No. 6185
EMalmen@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
PO Box  737
Boise, Idaho  83701-0737
Telephone:  208.343.3434
Facsimile:  208.343.3232

*Attorneys for Idaho Association of
Counties and Idaho Mining Association*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD JAYNE; GREATER YELLOWSTONE COALITION; THE LANDS COUNCIL; NATURAL RESOURCES DEFENSE COUNCIL; SIERRA CLUB; and THE WILDERNESS SOCIETY,<br><br>*Plaintiffs,*<br><br>v.<br><br>HARRIS SHERMAN, Acting Under Secretary for Natural Resources and Environment, U.S. Department of Agriculture; TOM TIDWELL, Chief, U.S. Forest Service; ROWAN GOULD, Acting Director, U.S. Fish and Wildlife Service; and KEN SALAZAR, Secretary, U.S. Department of the Interior; and TOM VILSACK, Secretary, U.S. Department of Agriculture, in their official capacities,<br><br>*Defendants,*<br><br>and<br><br>IDAHO ASSOCIATION OF COUNTIES; GOVERNOR C.L. "BUTCH" OTTER; KOOTENAI TRIBE OF IDAHO; and IDAHO MINING ASSOCIATION,<br><br>*Defendants-Intervenors.* | Case No. 4:09-cv-00015-BLW<br><br>**DEFENDANT-INTERVENORS IDAHO ASSOCIATION OF COUNTIES AND IDAHO MINING ASSOCIATION'S JOINDER AND CONSOLIDATED REPLY BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT - MERITS ......................................................................................2

III. ARGUMENT - REMEDY ....................................................................................3

    A. The Burden is on Plaintiffs to Meet the Equitable Test for Grant of the Injunctive Relief They Have Requested ..............................................3

    B. Plaintiffs have Failed to Meet Their Burden to Show that Extraordinary Remedy of Injunction Should Issue ..........................................5

        1. Plaintiffs Cannot Show Irreparable Harm ............................................5

        2. Plaintiffs Have Other Adequate Remedies At Law ............................11

        3. The Balance of Equities and Public Interest Do Not Support an Injunction ........................................................................................12

IV. CONCLUSION ....................................................................................................13

## TABLE OF AUTHORITIES

Page

**Cases**

California ex. rel. Lockyer v. U.S. Dep't of Agriculture ("Lockyer"), 459 F. Supp. 2d 874, 915, 919 (N.D. Cal. 2006); aff'd, 575 F.3d 999 (9th Cir. 2009) .......................................... 4, 5, 11

California v. Block, 690 F.2d 753 (9th Cir. 1982) ................................................................. 3, 11

eBay Inc. v. MercExchange, 547 U.S. 388, 391 (2006) ............................................................... 5

Greater Yellowstone Coal. v. Larson, ("GYC") 641 F.Supp.2d 1120, 1126-27 (D. Idaho 2009) ............................................................................................................................ 3, 7, 8, 9

Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995) ................................. 12

Kootenai Tribe v. Veneman, 313 F.3d 1094 (9th Cir. 2002) ..................................................... 11

Monsanto Co. v. Geertson Seed Farms, 130 S.Ct. 2743, 2757 (2010) .............................. 3, 4, 5, 11

Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005) ........................................................................ 4

Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374-77 (2008) ......................................... 4, 5

**Regulations and Rules**

36 C.F.R. § 294.12(b) .................................................................................................................. 9

36 C.F.R. § 294.14(d) .................................................................................................................. 4

36 C.F.R. § 294.23(b)(3) ............................................................................................................. 6

36 C.F.R. §§ 294.12, 294.13 ....................................................................................................... 6

40 C.F.R § 1550.4(j); 1502.21 .................................................................................................... 3

43 C.F.R. Subpart 2510 ............................................................................................................... 9

66 Fed. Reg. 3,244, 3,246 (Jan. 12, 2001) .................................................................................. 2

66 Fed. Reg. at 3,246 .................................................................................................................. 10

66 Fed. Reg. at 3,257 .................................................................................................................. 6

66 Fed. Reg. at 3,272-73 ......................................................................................................... 6, 9

58566-0003/LEGAL19076879.3

- ii -

## TABLE OF AUTHORITIES

**Page**

68 Fed. Reg. 41,865-41,869 (July 15, 2003) .................................................................................4

68 Fed. Reg. at 41,866-67 ..............................................................................................................4

73 Fed. Reg. 61,456, 61,479-86 (Oct. 16, 2008) ............................................................................2

73 Fed. Reg. at 61,456 ....................................................................................................................6

73 Fed. Reg. at 61,456, 61,463 ..................................................................................................7, 11

73 Fed. Reg. at 61,479-82 ............................................................................................................10

58566-0003/LEGAL19076879.3

- i -

## TABLE OF ABBREVIATIONS WITH COURT DOCKET REFERENCES

| | |
|---|---|
| Pl. Br. | Plaintiffs' Memorandum in Support of Motion for Summary Judgment (Docket No. 67-1) |
| Pl. Reply | Plaintiffs' Consolidated Brief in Opposition to Defendants' Motion for Summary Judgment and Reply in Support of Summary Judgment (Docket No. 96) |
| Def. Br. | Federal Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendants' Cross-Motion for Summary Judgment (Docket No. 80-1) |
| Def. Reply | Federal Defendants' Reply Memorandum in Support of Defendants' Cross-Motion for Summary Judgment (Docket No. 105) |
| IAC/IMA Br. | Defendant-Intervenors Idaho Association of Counties and Idaho Mining Association's Joinder and Consolidated Memorandum Supporting Federal Defendants' Cross-Motion for Summary Judgment (Docket No. 90) |
| TU Br. | *Amici Curiae* Memorandum of Trout Unlimited, Idaho Conservation League, and Dale Harris in Support of Defendants' Motion for Summary Judgment. (Docket No. 87) |
| Wood Decl. | Declaration of Chris Wood (Docket No. 85-2) |
| Otter Br. | Defendant-Intervenor Governor C.L. "Butch" Otter's Joinder and Consolidated Memorandum in Support of Federal Defendants' Cross-Motion for Summary Judgment (Docket No. 91) |
| Second Dinning Decl. | Second Declaration of Boundary County Commissioner Dan Dinning (Docket No. 90-3) |
| Brent Larson Decl. | Declaration of Brent Larson (Docket No. 80-2 – 80-4) |
| Second Prouty Decl. | Second Declaration of Alan L. Prouty (Docket No. 90-4) |
| Hoyt Decl. | Declaration of Marv Hoyt (Docket No. 67-4) |
| Second Hoyt Decl. | Second Declaration of Marv Hoyt (Docket No. 96-3 – 96-8) |
| Second Gehrke Decl. | Second Declaration of Craig Gehrke (Docket No. 96-9) |
| Third Prouty Decl. | Third Declaration of Alan L. Prouty dated October 4, 2010 filed concurrently herewith |

58566-0003/LEGAL19076879.3

## TABLE OF ACRONYMS

| | |
|---|---|
| BCR | Backcountry Restoration Theme |
| BLM | United States Bureau of Land Management |
| CPZ | Community Protection Zone |
| EIS | Environmental Impact Statement |
| ESA | Endangered Species Act |
| FEIS | Final Environmental Impact Statement |
| FS | United States Forest Service |
| FWS | United States Fish and Wildlife Service |
| GFRG | General Forest, Rangeland, & Grassland Theme |
| IRA | Inventoried Roadless Area |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |
| ROD | Record of Decision |
| AR FS | U.S. Forest Service Administrative Record documents are referenced as "AR FS," followed by document and internal page number. |
| Idaho Roadless Rule or Idaho Rule | U.S.D.A. Roadless Area Conservation Rule for National Forests in Idaho, 73 Fed. Reg. 61,456 (Oct. 16, 2008) |
| 2001 Rule | Nationwide Roadless Area Conservation Rule, 66 Fed. Reg. 3,244 (Jan. 12, 2001) |

Defendant-Intervenors Idaho Association of Counties ("IAC" or "Counties") and Idaho Mining Association ("IMA"), (collectively "IAC/IMA" or "Intervenors") hereby join Federal Defendants' Reply in Support of Cross-Motion for Summary Judgment and further submit this Consolidated IAC/IMA Reply Brief in Support of Federal Defendants' Cross-Motion for Summary Judgment.  Intervenors' Reply is further supported by the Third Declaration of Alan L. Prouty and Exhibits thereto filed concurrently herewith.  IAC/IMA respectfully ask this Court to issue an Order granting Federal Defendants' Cross-Motion for Summary Judgment, dismissing plaintiffs' Complaint, as amended, and denying any remedy to plaintiffs.

## I.    INTRODUCTION

The Idaho Roadless Rule is a landmark in collaborative conservation among community, conservation, government, industry, and tribal leaders and citizens.  These stakeholders are ready to work together in Idaho under the sustainable framework for protecting national forest IRA values that the Idaho Rule provides.  Plaintiffs, wed to the 2001 Rule "top-down" nationwide directive that they helped engineer, have limited their participation in the Idaho Rule process to dogmatic opposition.

Plaintiffs have attempted to paint a misleading picture of the Idaho Rule as the result of a flawed process that guts protection for the 9.3 million acres of national forest IRAs in Idaho compared to the 2001 Rule.  However, the federal defendants, supported by the agency record and also submittals by IAC/IMA, the Governor of Idaho, the Kootenai Tribe, and *amici curiae* conservation leaders, have confirmed that the Idaho Rule is a refinement of the 2001 Rule superior both in the process of its creation and the programmatic framework it provides for IRA stewardship in Idaho.  Plaintiffs have failed to meet their burden of showing an actionable legal flaw in the Idaho Rule process.  They have not met their burden of showing any likely threat to IRAs from continuing to use the Idaho Rule as an improved, updated approach for considering

activities in limited geographic areas for approval and implementation, after additional rigorous and collaborative site-specific project evaluation.

## II.     ARGUMENT - MERITS

IAC/IMA as *amici curiae* generally join in the federal defendants' Reply memorandum arguments, points and authorities regarding the merits of plaintiffs' claims.  The agency analyses here are more than reasonable and adequate, particularly so at the programmatic, permissive level, supported by a detailed NEPA EIS and ESA section 7 consultation process.  The agency analysis of the Idaho Rule did account for differences between the 2001 and Idaho Rules.  It projected a greater amount of potential roading, timber harvest and mining activities under the Idaho Rule in some areas, while taking into account that, under the Idaho Rule, there would be a greater number of total acres that would be off-limits compared to the 2001 Rule, and correctly disclosing that there is not a substantial overall difference in impacts between the rules after the various differences are accounted for.  See, e.g., AR FS 1110, 73 Fed. Reg. 61,456, 61,479-86 (Oct. 16, 2008), Tables 1 and 2; AR FS 844, FEIS at 8-18, Table S-2.

IAC/IMA emphasize that the EIS and ESA process for the Idaho Rule was more detailed, specific and otherwise at least equal or superior to that for the 2001 Rule that plaintiffs espouse as legally adequate.  "The 2001 Roadless Rule was the product of a national process and established management direction at the national level with limited focus on State or local issues."  73 Fed. Reg. at 61,457; AR FS 844, FEIS at 5.  There are 9.3 million acres subject to the Idaho Rule; the 2001 Rule EIS covered 58.5 million acres, involved thirty eight (38) states and all nine (9) Forest Service Regions.  73 Fed. Reg. at 61,457; AR FS 7, 66 Fed. Reg. 3,244, 3,246 (Jan. 12, 2001).  The Idaho Roadless Rule EIS and ESA analysis and consultation built upon the prior 2001 Rule as well as individual Forest Plan analyses, but included updated information and additional detail on individual as well as statewide Idaho national forest IRA values, alternatives, and effects.  See, e.g., 73 Fed. Reg. at 61,457; AR FS 844, FEIS at 22, 31-32, 87-88, 474-86, AR FS 6, 2001 Rule FEIS.  The Appendix C volumes of the Idaho Rule EIS

include a comparison of effects between the 2001 Rule, Idaho Rule, and Forest Plan direction for each individual IRA in Idaho. AR FS 863-865, FEIS, App. C.[1]

### III. ARGUMENT - REMEDY

IAC/IMA also generally join in the federal defendants' Reply memorandum arguments, points and authorities regarding remedy, including plaintiffs' lack of standing to seek injunctive and declaratory relief as well as lack of standing to seek judgment on the merits of their claims.

**A. The Burden is on Plaintiffs to Meet the Equitable Test for Grant of the Injunctive Relief They Have Requested.**

Plaintiffs present an erroneous view regarding the law of injunctive relief, typified by the following section heading in plaintiffs' Reply: "Defendants Fail to Justify Denial of Plaintiffs' Requested Relief." Pl. Reply at ii. As indicated in the federal defendants' Reply, the "requested relief" as framed in plaintiffs' opening brief was not simply for declaratory judgment or vacatur of the Idaho Rule, but for "injunctive relief setting aside FWS's biological opinion and the Idaho Roadless Rule and reinstating the 2001 Roadless Rule in the State of Idaho." Pl. Br. at 27; Def. Reply at 21. Contrary to plaintiffs' urging, the affirmative burden here lies with the plaintiffs. IAC/IMA Br. at 12-13; Def. Reply at 23. "It is not enough for a court considering a request for injunctive relief to ask whether there is good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test . . . ." Monsanto Co. v. Geertson Seed Farms, 130 S.Ct. 2743, 2757 (2010). Injunctive relief is an "extraordinary remedy" that is "never awarded as of right" and instead is only available after a

---

[1] Additional detailed site-specific EIS analysis that plaintiffs allege is required for Smoky Canyon Mine phosphate operations under California v. Block, 690 F.2d 753 (9th Cir. 1982) has already been completed in the Panel F & G Project EIS that is referenced and summarized in the Idaho Rule EIS. See 40 C.F.R § 1550.4(j); 1502.21 (incorporation by reference); AR FS 844, FEIS at 168-69; AR FS 1445-1450, Panel F & G Project FEIS. The ongoing measures to protect water quality and address phosphate project selenium issues about which plaintiffs complain, which were not affected by the Idaho Rule, are described by this Court in Greater Yellowstone Coal. v. Larson, ("GYC") 641 F.Supp.2d 1120, 1126-27 (D. Idaho 2009), as well as in prior briefing in this case. IAC/IMA Brief at 18-19; Second Prouty Decl.¶¶ 22, 23, Ex. A.

careful consideration of the established four equitable factors. See, e.g., Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 374-77 (2008).

In their Reply, plaintiffs assert that the traditional four-factor test does not apply where a plaintiff alleges a threat of irreparable environmental harm, particularly under the ESA, in which case the balancing of equities by a Court is foreclosed. Pl. Reply at 37-38. To the extent any ambiguity on this issue remained after Winter (a case concerning actual operational effects on whales protected by statute where injunctive relief was denied), Monsanto without a doubt put it to rest. The Supreme Court's opinions in Monsanto and Winter are clear that injunctive relief is an extraordinary remedy and that each element of the equitable four-factor test applies to all prayers for injunctive relief, without exception for when ESA violations or take are alleged or likely to occur. Winter, supra; Monsanto, supra; IAC/IMA Br. at 14-19.

Plaintiffs further argue that this Court need not address injunctive standards if it deems vacatur of the Idaho Rule appropriate. Pl. Reply at 34. However, simple vacatur of the Idaho Rule would result in no programmatic rule for protection of Idaho IRAs being in effect. Plaintiffs have framed their requested relief to reinstate the 2001 Rule as injunctive and then erroneously suggest that the applicable injunctive relief standards don't apply to that request. The injunctive relief standards clearly apply to plaintiffs' reinstatement request. Lockyer, infra n. 2, Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005), and other case law support this conclusion and do not dictate otherwise. IAC/IMA Br. at 23-24.[2]

---

[2] Indeed, the remedy granted in the Lockyer litigation relied upon by plaintiffs supports continuing the Idaho Rule rather than the 2001 Rule in Idaho. As a result of litigation by the State of Alaska, the 2001 Rule was amended in 2003 to exclude at least for an interim period more than 9 million acres of IRAs on the Tongass National Forest. 68 Fed. Reg. 41,865-41,869 (July 15, 2003); to be codified at 36 C.F.R. § 294.14(d). This amendment excluded from the 2001 Rule an area of IRAs as large as that in Idaho and opened 300,000 IRA acres to consideration for potential additional road and timber harvest development. Id., 68 Fed. Reg. at 41,866-67. This amendment relied in part on the detailed environmental analysis in the EIS process for the revised Tongass Forest Plan and the IRA protections in that Plan, as well as local community hardships and interests. Id. Although the 2003 Tongass amendment remains the subject of separate litigation, in Lockyer this exclusion of the Tongass was affirmed as part of

**B.     Plaintiffs have Failed to Meet Their Burden to Show that Extraordinary Remedy of Injunction Should Issue**

In addition to the threshold demonstration that defendants' conduct is unlawful, a plaintiff must satisfy the traditional equitable test before a permanent injunction may issue, demonstrating:  (1) "that it has suffered an irreparable injury, (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) . . . considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Monsanto, 130 S.Ct. at 2756 (quoting eBay Inc. v. MercExchange, 547 U.S. 388, 391 (2006)).  In their Reply as well as their opening submittal, plaintiffs fail on all four prongs of the test.

**1.     Plaintiffs Cannot Show Irreparable Harm**

To obtain injunctive relief, plaintiffs must demonstrate more than that harm may occur, they have the burden to show that there is at the least a likely, imminent real threat of irreparable harm. Winter, at 375-76.  Showing potential for irreparable harm at some future date is not sufficient; there must be some present or imminent threat.  See, e.g., Monsanto,130 S. Ct. at 2770; Def. Reply at 22.  They have not met this burden.  Plaintiffs' assertions of irreparable injury are based on their erroneous arguments that the Idaho Rule is far less protective than the 2001 Rule and "authorizes" roads, logging, and phosphate mining.  To the contrary, the Idaho Rule provides a refined, protective programmatic framework for considering projects for potential approval; it authorizes nothing to proceed on the ground.  The record reflects that there are no pending timber sales, roads, or any other projects that the Idaho Rule directs or requires to be implemented.  There is no imminent, likely environmental threat to guard against here.  Fed. Reply at 3-7, 21-22.

---

the vacatur and injunctive relief granted in reinstating the 2001 Rule. California ex. rel. Lockyer v. U.S. Dep't of Agriculture ("Lockyer"), 459 F. Supp. 2d 874, 915, 919 (N.D. Cal. 2006); aff'd, 575 F.3d 999 (9th Cir. 2009).  There is as much or more basis for likewise continuing to exclude Idaho from any application of the nationwide 2001 Rule based on the EIS and ESA analysis for and protections in the Idaho Rule, an exclusion which was also a part of the updated remedy decision in Lockyer.  Lockyer, 2008 WL 5102864, *7, n.3 (N.D. Cal. Dec. 2, 2008).

### a. The Idaho Rule is Equally or More Protective than the 2001 Rule

When fairly compared to the 2001 Rule, the Idaho Rule "is as, or more, protective than the 2001 Roadless Area Conservation Rule" Wood Decl. ¶ 7. The Idaho Rule provides comparable and superior protections for IRAs in many ways. See IAC/IMA Br. at 7-11; Trout Unlimited et al. *Amici* ("TU") Br. at 3-13; Otter Br. at 5-11.

The Idaho Rule indisputably provides greater protection of roadless values for over 3 million acres of IRAs. See Pl. Br. at 1; TU Br. at 3-10. Plaintiffs attempt to discount the Idaho Rule protection for these areas by arguing that forest plan and other provisions provide protection in some of the areas, and that little or no roading or other development is expected in them in any case. Pl. Reply at 2-3. But they do not establish that the agency analysis exaggerated any projected effects in these or other areas, and fail to explain why the heightened regulatory protection provided by the Idaho Rule is different than the protection they assert that the 2001 Rule provides compared to forest plans or other existing directives.

Plaintiffs' accusation that the Idaho Rule "strips virtually all" protections from the 405,000 acres allocated to the GFRG theme is patently false. Pl. Reply at 3. Among the protections remaining in force are ESA, NEPA, NFMA forest plan prescriptions, and other agency directives, guidelines, and procedures. 73 Fed. Reg. at 61,456; IAC/IMA BR. at 10-11. The 2001 Rule likewise relies on such protections for consideration of projects under its various exceptions allowing road building and timber harvest, which unlike the Idaho Rule universally extend to all IRAs. 36 C.F.R. §§ 294.12, 294.13, 66 Fed. Reg. at 3,272-73; 66 Fed. Reg. at 3,257.

Further, the Idaho Rule is explicit that activities that are permissible under the Rule in the BCR theme category outside the CPZ are expected to be infrequent. 36 C.F.R. § 294.23(b)(3). Plaintiffs attempt to discount but don't show why this explicit Rule provision, not found in the 2001 Rule regarding its several exceptions for allowing roads in any of the 9.3 million acres of IRAs in Idaho, won't be enforceable or accurate. Both rules allow exceptions that apply in the

BCR areas within and outside CPZ; plaintiffs indeed maintain only that the 2001 Rule imposed "equivalent (and arguably tighter) constraints". Pl. Reply at 24.

Also, as emphasized in the *amici* submittals, the Idaho Rule is more protective because it is more enduring and sustainable. TU Br. at 9-11, Wood Decl. ¶¶ 6-7. This is because the Idaho Rule process and its provisions for implementation have much more local acceptance and collaborative involvement than the 2001 Rule "top down" nationwide directives. Id.; IMA/IAC Br. at 4-5; Second Dinning Decl. ¶¶ 11-12.

        **b.    The Idaho Rule Authorizes Nothing on the Ground and No Projects are Imminent Under the Idaho Rule**

As described above, the Idaho Rule is only a programmatic level framework for considering projects for potential approval; it does not authorize or commit to anything to proceed on the ground. 73 Fed. Reg. at 61,456, 61,463; Def. Br. at 2-6, 29. Any such projects will require further site specific analysis that includes consideration of effects on roadless values and fish and wildlife species about which plaintiffs express concern. The record does not support a claim of imminent, likely injury attributable to the Idaho Rule from even the few projects that Plaintiffs identify in their frustrated search to show some threat of harm. Def. Reply at 22.

Plaintiffs point to a single small component of a single existing phosphate mine project on the Caribou-Targhee National Forest—what is known as the South Lease Modification Area ("South Lease Area") (also identified as the "North Fork Deer Creek" area by plaintiffs and federal defendants) for the Simplot Smoky Canyon Mine Panels F & G Project. Pl. Reply at 8. This project and the South Lease Area provide no basis for this Court to issue an injunction reinstating the 2001 Rule because, among other reasons, the potential for activities in the South Lease Area is already the subject of 1) a BLM stipulation with Simplot that defers a determination whether to allow activities to proceed in the South Lease Area; and 2) the separate pending GYC litigation in which Plaintiffs are free to pursue an injunction or other steps to

protect their interests against any perceived threat of harm on the ground.  Def. Reply at 3-4; IAC/IMA Br. at 17.

The South Lease area activities included in the Smoky Canyon Panel F & G Project represent only about 160 acres of surface disturbance, the effects of which have already been addressed in the Idaho Rule EIS and the more detailed site-specific project EIS; AR FS 844 at 165-71, App. C, C5-85 to C5-88 (Sage Creek IRA); AR FS 1445-1450, Panel F & G Project EIS. Based on the Project EIS, the FS and BLM have already evaluated and approved roads and other Panel F & G Project activities as consistent with the 2001 Rule, in June 2008 RODs issued prior to the issuance of the Idaho Rule.  Def. Br. at 3-4; Brent Larson Decl. Ex. 1, FS ROD at 22-28; AR FS 1454 at 22).[3]  The FS June 2008 approval of Panel F & G Project activities has been affirmed by this Court in the separate GYC litigation, and remains pending on appeal in the Ninth Circuit Court.  IAC/IMA Br. at 17; GYC v. Larson (formerly GYC v. Timchak), 641 F. Supp. 2d 1120 (D. Idaho 2009); 9th Cir. No. 09-37529.

The memorandum of agreement stipulation between BLM and Simplot regarding the South Lease Area provides that no surface-disturbing activities may commence in the Area until the FS and BLM make a determination whether the 2001 Rule applies to such activities, and whether the activities are allowed or must be modified to comply with the 2001 Rule or other applicable regulations.  Third Prouty Decl. Ex. A; Hoyt Decl., Ex. 10; AR FS 1454, BLM ROD App. I at 2-3.  As federal defendants have explained, it is not yet ripe for the FS or BLM to determine whether activities in the South Lease Area need to be denied or modified to meet requirements under either the Idaho or 2001 Rule, because Simplot has not yet even requested to

---

[3] Plaintiffs, in their recent scoping comments on the Dairy Syncline proposal, admitted that the FS has not yet authorized any phosphate activities beyond those authorized under the 2001 Rule. IAC/IMA Br. at 17, n.5; Second Prouty Decl., Ex. C.

commence such activities. Fed. Reply at 3-4; AR FS 1454, BLM ROD App. I at 2-3; Brent Larson Decl. ¶ 7.[4]

Federal defendants have also confirmed that this future determination is not the "formality" baldly asserted by plaintiffs. Pl. Reply at 9; Def. Reply at 4.[5] In any case, plaintiffs confirm that if and when the Forest Service determines to allow activities in the South Lease area to proceed, they have an opportunity to litigate any issues in their pending GYC litigation. Pl. Reply at 8, n.7, Second Hoyt Decl. ¶ 6, Ex.16. The current GYC litigation stipulation regarding activities expires at the end of 2010, but at that time plaintiffs are free to seek to further amend their complaint in GYC and seek injunctive relief in the district court or Ninth Circuit, not to

---

[4] The BLM/Simplot stipulation explicitly states 1) "The applicability of the [2001] Roadless Rule to activities proposed in the South Lease area has not yet been determined, and a determination regarding applicable regulations is not required until lessee requests authorization for mining activity to commence"; 2) "Mining activity in the South Lease area is not expected to commence until after 2010, according to the mine plan"; 3) "No mining activities, road construction, and/or surface disturbing activities will be allowed on [the South Lease area] until a determination is made regarding whether the [2001] Roadless Area Conservation Rule applies to the proposed activities, and whether the activities are allowed or must be modified"; and 4) "Accordingly, the lessee agrees that prior to undertaking any of these activities on the above described lands, the proposed activities will be subject to further review and may be prohibited or modified by the Federal government if necessary, to comply with applicable regulations." Third Prouty Decl., Ex. A at 1-2; AR FS 1454, BLM ROD App. I at 2-3.

[5] For one thing, Plaintiffs are wrong in asserting that the 2001 Rule would prohibit roads in the South Lease Area. Although it is not ripe for this Court to address that issue, Simplot would dispute that assertion. Third Prouty Decl. ¶¶ 3-4. The 2001 Rule allows roads to be built in IRAs when one of several circumstances exist, including: (1) "A road is needed pursuant to reserved or outstanding rights, or as provided by statute or treaty;" . . . (2) "A road is needed in conjunction with the continuation, extension, or renewal of a mineral lease on lands that are under lease by the Secretary of the Interior as of January 12, 2001 . . . ." 36 C.F.R. § 294.12(b), 66 Fed. Reg. at 3,272-73. The Simplot Smoky Canyon lease related to the Panel F & G Project pre-dates the January 12, 2001 issuance of the 2001 Rule. AR FS 844, FEIS at 165, 168; Third Prouty Decl. ¶ 3. Under BLM regulations codified at 43 C.F.R. Subpart 2510, there is an accompanying pre-existing right to have the lease boundary modified to include the South Lease Area when certain criteria in the BLM regulations are met. The BLM has already determined that the requirements for this modification have been met, and that the 2001 Roadless Rule does not prohibit such lease boundary modifications. AR FS 1454, BLM ROD at 10, 22. Thus, there is a sound basis for the agencies to determine that South Lease Area road construction as well as other activities that are the subject of the BLM/Simplot stipulation are consistent with the 2001 Rule as well as the Idaho Rule, under the above two provisions in the 2001 Rule allowing for road construction in IRAs.

mention seeking a further stipulation.  Any issues regarding the Smoky Canyon project are appropriately resolved in that ongoing litigation specific to that project.

Plaintiffs also erroneously assert that other similar projects to the South Lease Area activities are "in the agency pipeline," citing to the first and second Hoyt declarations.  Pl. Reply at 9.  However, the declaration paragraphs and their exhibits that are referenced do not show any additional similar projects that are currently likely to enter an IRA.  Second Hoyt Decl. ¶¶ 3-11, Hoyt Decl. ¶¶ 19-20, 22-25, Exs. 10, 11, 13, 14.  As shown in prior briefing, only the Dairy Syncline proposal that is in the early EIS scoping stage and the Nu-West exploration proposal that has already been modified to avert IRAs are pending.  IAC/IMA Br. at 17-18; Def. Br. at 4.[6]

The facts are that 1) not much road construction or timber harvest is projected in IRAs under either the 2001 or Idaho rules (see, e.g., 73 Fed. Reg. at 61,479-82); 2) both rules allow exceptions to prohibitions against roads and related timber harvest and other activities in various IRAs; 3) the pace of such activities over the last ten or more years has been slowing irrespective of what programmatic framework applies, particularly with site-specific project analysis, appeals, and litigation delays that the Idaho Rule did not change (see, e.g., 66 Fed. Reg. at 3,246); and 4) all project proposals under the Idaho Rule are subject to the Idaho Rule's implementation commission collaborative review process, which is not likely to support a large volume or rapid approval pace for controversial projects.  See, e.g., Second Dinning Decl. ¶¶ 14-17.

---

[6] Plaintiffs refer to a table in the record to allege that three timber sales in the Caribou-Targhee National Forest "will be undertaken" under the Idaho Rule.  Pl. Reply at 35, n.22.  The reference to the three proposed projects in the table was only a "best estimate" of sales that may take place within the next 15 years, *after* further site-specific NEPA and ESA evaluation and review.  AR FS 1160, table 3.  The listing of a timber sale as proposed or scheduled for consideration within the next fifteen years is not an imminent or likely threat from leaving a programmatic rule in place that allows its consideration.  Def. Br. at 4.

DEFENDANT-INTERVENORS IDAHO ASSOCIATION OF COUNTIES AND IDAHO MINING
ASSOCIATION'S JOINDER AND CONSOLIDATED REPLY BRIEF IN SUPPORT OF FEDERAL
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 10
58566-0003/LEGAL19076879.3

### 2. Plaintiffs Have Other Adequate Remedies At Law

Plaintiffs do not attempt to address this factor directly to any degree in their Reply, particularly as it has been emphasized in the recent <u>Monsanto</u> U.S. Supreme Court decision. As was the case in <u>Monsanto</u>, plaintiffs here undeniably have other adequate remedies to address any alleged harms. As described above, projects eligible to be considered for implementation under the Idaho Rule must still undergo separate and further environmental review before any commitment to ground-disturbing activities occurs. <u>See, e.g.</u>, 73 Fed. Reg. at 61,456, 61,463. Plaintiffs, if dissatisfied after completion of the project administrative review process, may file a new suit challenging any projects eligible for consideration under the Idaho Rule and seek appropriate preliminary and permanent relief if they choose. As acknowledged by the plaintiffs, an injunction is not appropriate where a less drastic remedy is available. Pls. Brief at 34-35; <u>Monsanto</u>, 130 S.Ct. at 2761. "Accordingly, a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm." <u>Monsanto</u>, 130 S. Ct. at 2760. In their reliance on <u>California v. Block</u>, 690 F.2d 753 (9th Cir. 1982), <u>Kootenai Tribe v. Veneman</u>, 313 F.3d 1094 (9th Cir. 2002), <u>Lockyer</u>, and other earlier case law to justify an injunction that reinstates the 2001 Rule, Plaintiffs ignore the <u>Monsanto</u> ruling on this point.

Regarding this factor, Plaintiffs also largely ignore the permissive rather than directive nature of the Idaho Rule and its protections that are at least comparable to the 2001 Rule. This clearly distinguishes the present case from the <u>Lockyer</u> and <u>Kootenai Tribe</u> facts, wherein there was no such updated protective Rule to consider in comparison with the 2001 Rule. IAC/IMA opening brief at 20, 23; <u>Lockyer</u>, 459 F. Supp. 2d at 881; <u>Kootenai Tribe</u>, 313 F.3d at 1110. As explained by federal defendants, the Idaho Rule also stands in contrast to the constraining forest planning direction at issue in <u>Block</u> that plaintiffs attempt to compare with the Idaho Rule provision regarding phosphate mine roads. Fed. Reply at 8-10.

DEFENDANT-INTERVENORS IDAHO ASSOCIATION OF COUNTIES AND IDAHO MINING ASSOCIATION'S JOINDER AND CONSOLIDATED REPLY BRIEF IN SUPPORT OF FEDERAL DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT - 11
58566-0003/LEGAL19076879.3

### 3. The Balance of Equities and Public Interest Do Not Support an Injunction

Plaintiffs have not shown any genuine hardship from allowing the Idaho Rule to remain in effect. On the other hand, the uncertainty and delay in further project review caused by this litigation is negatively impacting local communities in Idaho. IAC/IMA Br. at 19-23. Enjoining the Idaho Rule (a rule that is at least comparable if not superior to the 2001 Rule in protection of roadless values) in favor of a rule with little local support would also be contrary to the public interest. IAC/IMA Br. at 21-23. When equitable, a regulation can be left in place while the agency completes the necessary procedures to achieve NEPA or other compliance. Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1405 (9th Cir. 1995).[7]

Plaintiffs' assertion that the 2001 Rule has "sparked" collaboration equal to the Idaho Rule is unfounded. Some collaboration regarding Myrtle Creek and other projects may be occurring under the exceptions allowed in the 2001 Rule and despite the litigation uncertainty. However, the record leaves no doubt that the national as well as local collaboration supporting the Idaho Rule and its refined, updated provisions provide a far stronger framework for true collaborative problem-solving that addresses risks to communities while protecting roadless area values. Def. Br. at 1; IAC/IMA Br. at 4-11; TU Br. at 8-13. As TU has explained, the local as well as national support for the Idaho Rule is key to implementing the stewardship and other conservation objectives that are espoused in both the Idaho and 2001 Rules. TU Br. at 9. The 2001 Rule engineered at the national political level by plaintiffs and their allies has never had

---

[7] As explained in prior briefing, IAC/IMA join federal defendants in requesting that this Court hold additional proceedings if it finds in plaintiffs' favor on some point on the merits, so that relief may be equitably and narrowly tailored to the extent and character of the flaw determined by the Court. Def. Br. at 28; IAC/IMA Br. at 12; Def. Reply at 24-25.

that breadth of support. It remains an embattled rule feeding continued litigation and resentment.[8]

## IV. CONCLUSION

The NEPA, ESA, and other analysis for the Idaho Rule is commensurate with its geographic scale, programmatic design and non ground-disturbing nature. Plaintiffs continue to fly-speck the record in search of flaws and points to support their arguments. However, the record in its entirety provides overwhelming support for the reasonableness and adequacy of the Idaho Rule process and the protective stewardship management framework it provides for national forest IRAs. The Idaho Rule is a rule that implements the national policy of conserving roadless areas and an improved refinement of the 2001 Rule – points that are ignored by plaintiffs given their narrow political agendas. Plaintiffs fail to apply controlling legal precedent to their request for injunctive relief reinstating the 2001 Rule, and fail to meet their burden of showing that this Court should award such extraordinary relief in this case.

DATED: October 5, 2010　　　　　　　　　　**PERKINS COIE LLP**

　　　　　　　　　　　　　　　　　　　　　By: */s/Robert A. Maynard*
　　　　　　　　　　　　　　　　　　　　　　　Robert A. Maynard, ISB No. 5537
　　　　　　　　　　　　　　　　　　　　　　　RMaynard@perkinscoie.com
　　　　　　　　　　　　　　　　　　　　　　　Erika E. Malmen, ISB No. 6185
　　　　　　　　　　　　　　　　　　　　　　　EMalmen@perkinscoie.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Idaho Association of Counties and Idaho Mining Association*

---

[8] Plaintiffs have confirmed their role in the 2001 Rule creation and that they confined their participation in the Idaho Rule process to steadfast obstruction and opposition based on their dogmatic preference for the 2001 Rule, irrespective of the protections offered and included in the Idaho Rule. Pl. Reply at 2, n.1, Second Gerke Decl. ¶¶ 4, 5, 8, 10.

# CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2010, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Idaho by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

    Kootenai Tribe of Idaho – wbarquin@kootenai.org

    Barclay T. Samford – Clay.Samford@usdoj.gov

    Michael R. Eitel – Michael.Eitel@usdoj.gov

    Brad Michael Purdy – bmpurdy@hotmail.com

    David F. Hensley – david.hensley@gov.idaho.gov

    Julie Weis – jweis@hk-law.com

    Thomas C. Perry – tperry@osc.idaho.gov

    William K. Barquin – wbarquin@kootenai.org

    Timothy J. Preso – tpreso@earthjustice.org

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party for commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

    NONE.

                                                     */s/Robert A. Maynard*
                                                     Robert A. Maynard
                                                     Erika E. Malmen